20-60-79. The State of Velma Lea Schultz v. Brown. Okay, looks like we have everyone here. Mr. Riffle, is that how your name's pronounced? Yes, sir. Okay, go ahead. Well, I'm representing the appellant and this K, and first of all, I'd like to reserve about three minutes of my time. We'll see how that works. Okay, this case, what it's about, it's about the appeal process for Medicaid applicants in the State of Oklahoma. What it's not about is Ms. Schultz's Medicaid eligibility. See, in Oklahoma, when an applicant applies for Medicaid, their application is filed with the Oklahoma Department of Human Services. The Assistant General Counsel... If it's not about her eligibility, then why does she have a right to bring this claim? I came to Oklahoma and bring this claim. If she's not trying to seek something for herself, ultimately, then what right does she have to be in court challenging these rules? Well, the federal case is not about her eligibility. Okay, what's her ultimate concern? Her ultimate objective is about her eligibility, but that's an issue for the State of Oklahoma. The ultimate is not about her eligibility. It's getting her past due, what you claim, her past due benefits. Isn't that right? That's correct, but that's something that... Okay, but what the cases seem to say is unless she's seeking something for the future, something that will help her in the future, as opposed to getting compensation for past wrongs, then she's not permitted to pursue it in federal court. We have to look at the reality of what's actually being done here. You can't just divide up the case. Go ahead. Go ahead. But, Your Honor, she's not asking for the federal court to award her benefits. What she's asking for is the court to order the State of Oklahoma to conform their proceeding to comply with federal law. But the only reason she's in here, we have to look at what's really going on here. The only reason she wants that is so she can get past benefits. The cases you've cited are ones where there's some future benefit. You'll go to medical school in the future. You'll get your charter in the future. But if ultimately all you're seeking is something is to correct a past wrong, then you're barred by the 11th Amendment or lack of standing. But, Your Honor, the 11th Amendment, with all due respect, applies to federal courts. It does not apply to state courts or state proceedings. Yeah, but you're using a federal court to get this. No, sir. Yes, you are. Why not go to state court then? Why are you in federal court? Because we want a ruling saying this is illegal. And then you go to state court to say this is illegal. Therefore, you have to reinstate. You have to give me past benefits. No. That's why I asked what ultimately you want. Ultimately, what you want in this litigation, if all you get is an order saying, a decision saying you're entitled to this sort of hearing and you don't do anything with that, then you don't belong in court. You have to have some to pursue this case. And the reason you have some interest is because you want to get those past benefits, which is great. That's fine. But you can't do it in this court. But, Your Honor, we haven't pled that in our complaint or response. And we have not asked this. The Shultz estate has never asked for the federal court to award benefits. What the Shultz estate has asked is that the Shultz estate be afforded a process in state court which complies with the impartial hearing. And then the 11th Amendment does not apply to a state court proceeding. Okay. But first, but to have a right to sue, you need to show that you have some stake in the ultimate outcome. You need to say, I'm going to benefit from this litigation. Okay. Otherwise, you don't belong in court. So once you say how you're going to benefit, it's clear that the benefit, the only benefit that you're going to get from this is possible re-award of past benefits. No, Your Honor. What else? Okay. Well, then explain. What is the estate going to get ultimately if it wins this federal litigation? A fair hearing. A fair hearing that complies with federal law. A fair hearing to determine something that's totally irrelevant. We don't do that. No. A fair hearing before... A fair hearing so that she can be declared eligible so that past benefits can be awarded. I don't see why... But we're not asking the court for that. What we're asking... We're not asking for that, but... Okay. Go ahead. Your Honor, with all due respect, what we're asking for is we're asking just to be able to heard. The process in Oklahoma has... Why do you care if you're heard? You have to explain why we should care that you're heard. Well, because her... First of all, the Medicaid process, the appeal process is violating federal law, plus it's not giving her her right to due process. You have the same person making the determination that's also making, as far as her eligibility, making the determination as to whether she's eligible or not. Well, and then also determining her appeal. Let me drill down a second on the obvious fact. She is deceased, right? That's correct. And so there's a question of whether there's retrospect... Whether the substance... Note, not the labels, not what you say you're asking for, but the substance of this litigation is seeking retrospective relief. That involves the 11th Amendment. The other question is, insofar as you're seeking injunctive or prospective relief, she's deceased. She cannot benefit from that. And so, right? I agree, but she is not the litigant. The estate is the litigant. Well, well... And the estate can benefit from a fair hearing. Well, wait a minute. Okay, let's frame it this way. Are you familiar with Judge Hart's dissent concurrence in the PECA case? Yes, I am. I tried that case. Explain to me why that case, that concurrence does not answer the question of why you cannot prevail here. I mean, it is not a... Of course, it's not a controlling opinion, but it seems to me the logic of that opinion is right. Because there's a huge and very, very important difference between PECA and this case. The difference is, PECA was seeking the court, asking the court to review, approve, and award benefits. That is not what Schultz is seeking. Schultz would just like to have a fair hearing on her denial in front of a state tribunal in a proceeding that complies with federal law. Now, if the state court awards benefits, which we believe that they will, because keeping in mind the ALJ did the first time, then great. If they don't, then they don't receive the benefits. But what the Schultz estate is entitled to is due process and for the proceeding to comply specifically with the statute, the CFR that's been cited in my brief. That is the huge difference between those two cases. Well, then let me drill down on what I... The point is not necessarily what Ms. PECA was seeking or the state. It was the person, it was the power of attorney for her. What I'm drilling down on is in the concurrence, the position was made, the rationale was made that even if you were purporting to seek declaratory or prospective relief, if the only purpose that you're going to gain out of that is that you can take that judgment and go to state court and say, here, your system is wrong. Your system would not give me a fair hearing. Now, give me a fair hearing so I can get relief. And if that's the only thing you're trying to do, it is, as the Supreme Court said, and as Judge Hart's concurrence said, an in run around the 11th Amendment. That's the point. The point would be if the only thing you're going to get out of that is the ability to do what I hear you say you're going to do, which is to take that judgment, that declaratory judgment, and go to state court and say, now, give me a fair hearing under what the 10th Circuit said you need to do. And if that's what you're going to do, and then the outcome of that fair hearing would be benefits, then why is that not an in run around the 11th Amendment that was spoken of in the concurrence and also spoken of by Supreme Court, frankly? Because in the concurrence, that process had never happened, and that wasn't sought. In PECA, what was sought was specifically asking the federal court, which the 11th Amendment applies, as you know, to the federal court awarding retroactive damages. It does not apply to the state court. What we have here, your honor, is we have a flawed system, and it doesn't comply with federal law. It doesn't give due process because the same decision maker that's making the decision on the application is also the trier, jury, and executioner on the state system. All the estate wants is a fair hearing. How do we fix this problem if you don't intervene and enforce federal law and make the state conform their process to the specific requirements of the statute? I think the distinction that was drawn, and it may well have been, I won't take the time to go back and look, but it may well have been the Supreme Court's Adelman decision. The distinction that was drawn was a situation where the plaintiff was still alive, so the plaintiff could benefit from prospective relief, and then as an ancillary benefit of this injunctive declaratory relief, the ancillary benefit is, yes, she gets to go back and seek benefits, but in this situation, the plaintiff is not alive, and therefore, they're the only purpose that can be served by a declaratory judgment in this case is to allow for, I know you're not getting, you wouldn't be getting benefits in this case, but if the only purpose is to allow you to go back to state court and get benefits, wouldn't the federal court be allowing an end run around the 11th Amendment? In other words, wouldn't we be allowing litigation that, in effect, would affect the fisc of the state by ruling in the way that we're ruling? No, Your Honor, because that's making an assumption that the Scholta state is going to be able to go back and win that case. We don't know that. That's up to a state court judge, and which the 11th Amendment doesn't apply to them. That's exactly- Let me press pause there. Why would that assumption have to be made? Because the 11th Amendment is triggered by what you're asking for. It's not triggered by whether you're going to win. If you had come into this court and said, I want money, I want benefits, you're correct. Bingo. The 11th Amendment is triggered, and you would be barred. It's what you're asking for. It's not whether you get it. If you map that same scenario at play here, it's just one step removed. What we would be saying if we did what you wanted is, okay, the state system is flawed. Now, we arm you to go back to state court and ask for benefits. One step removed, same process. You're asking for something, so why should we allow you to ask the state court to hit its fist when you could not, in federal court, ask the state court to hit the fist? Because this is the only way to solve the problem, Your Honor. If we don't have- You say, okay, if the state does not have an ability to recover money at the state court level, then the case is moved. There's no live controversy at stake. How do we fix this problem? I think it's common sense. We don't have to argue. There is a problem with the Oklahoma system, but how do we fix that without having a live controversy? That is exactly what- I think consistent with Judge Hart's concurrence, you may be able to fix it. You just can't fix it in federal court. That's the point. I don't know what your relief is. I don't know what your remedies are. You just don't have any here, at least if the outcome is that we would be sanctioning you going back and applying to try to get money from the state, if that's what we would be doing. No, part of this issue is simply that your client- I'm not trying to make an advisory opinion here, but I think we would at least have a much more difficult question if your client was alive, if your client could benefit from prospective relief, but your client can't. Your Honor, my client is the estate, and all the estate is asking for is one thing, and that is to have a proceeding under the appellate process which complies with the federal statute and due process. That's all my client is asking. That is it. A proceeding in state court. A proceeding in state court that complies with that. A proceeding in state court in which you can ask to get benefits under that proceeding. Sure, but that doesn't mean we're going to get them. All we would be- well, just as when you go to federal court and you were to sue the state and seek money, there's no guarantee you get it, but what we would do is we would bar you from even asking under the 11th Amendment. So why this one-step remove? Why should we not bar you from being armed by us to go back to state court and ask the state to give you money? Because the Oklahoma system specifically violates and reeks of impropriety. That's what the problem is. It violates the federal statute, it violates the due process clause of the 14th Amendment, and it violates common decency that you have the same person involved in evaluating the application and then turn around. We have three witnesses- You've said that half a dozen times. Is no one else challenging it? Is there no one else with a client who's challenging this procedure? Your Honor, if I may answer, I'm out of time. No, but we're not the only one that's had that problem. We have three witnesses that will testify that have been within- Please, your time's up, so please be brief and answer my question. Is there anyone else challenging this procedure that is so unfair in your eyes? Is your question, have they filed suit? Okay, has anyone else filed suit? I don't know, your Honor. I mean, somebody else could bring a suit and declare that, and then you might be able to use that to go into state court, but okay, thank you. But they would face the same problem. Not if they have a living client. Okay, let's hear from the appellees. Mr. Pettifer, are you- Yes, your Honor, I'm going to go first. May it please the court, my name is John Pettifer, and I represent Justin Brown, the director of the Oklahoma Department of Human Services, and I will be splitting my time with Susan Eades, who is counsel for the Oklahoma Healthcare Authority. I would like to briefly discuss the underlying facts of this case, because I believe it shows there is no ongoing violation of federal law, and the appellant is asking a federal court to overturn a past decision it is unhappy with. Appellant's appeal was heard by an impartial hearing officer. The hearing officer was not an employee of the legal division, and at the time was working in a separate building. However, even if you take the appellant's accusations as true, the facts show the appellant is really concerned with past action of DHS, not an ongoing violation of federal law. Appellant submitted to the appeals process despite already knowing all these alleged biases. The attorney for appellant has tried many cases before the same hearing officer that was involved in this case. The attorney for the appellant has not raised these issues in past or current cases that involve the DHS appeals process. Is all this in the record? Is what you're saying in our record? I do not believe so, no, your Honor. You should then you probably shouldn't be referring to it. Okay, okay, your Honor. I'll stretch that. But in this case, the appellant filed their complaint in this case only after DHS decided to appeal the hearing officer's agency to the director. The appellant did not wait to see what the director's decision would be. He did not appeal to the state district court as allowed in the state statute covering appeals. Instead, she ran to federal court for an injunction confirming a favorable past decision. Now the appellant is trying to claim the DHS appeals process constitutes an ongoing violation of their due process and federal rights when they quit the appeals process well before completing the process. If the appellant was a live claimant, would they be able to proceed without a bar of the 11th Amendment? I do not believe so. You mean under under state law? No, I'm saying right here in front of us, right here in in the federal district court that they brought an action challenging the legal propriety under under due process principles or otherwise federal law of Oklahoma's system and sought a declaratory judgment that that system is legally flawed and and were able to benefit from prospective relief because they were alive. Would they be would they be similarly situated to the appellant here or would they be in a different position? Oh no, your honor. If if the appellant was alive, they would have be able to bring the claim in federal court. All right. And that's that's kind of the key distinction in this case. I believe that the because the appellant is deceased, she has she can suffer no ongoing harm because she is deceased. When you started, I thought you were going to be saying that there might have been a problem in the past, a due process problem, but that's been cured. There's been no change in the state procedures since this case was filed. No, your honor, the state state statute that covers appeals is still still the same as when the case started. Proceed. Okay. The appellant did not have a problem with process when they participated in the initial hearing, despite already knowing all the alleged biases. Really, this case is about the appellant wanting the federal courts to issue an injunction confirming a past decision that was favorable to their client. Unfortunately, for the appellant, the 11th Amendment bar suit in a federal court against a state by its citizens. Ex parte Young, a limited exception for cases where there is an ongoing violation of federal law. But Ex parte Young makes clear federal case courts are not for cases in which there's been a past violation. The actions of the appellant make clear what it really wants is for this court to rule on a alleged past violation of federal law. And the court in Pappas and states when applying Ex parte Young courts look to the substance rather to the form of the release sought. The substance of what the appellant is asking for is an order reinstating a previous order deeming the appellant eligible for Medicaid or perhaps even an order declaring DHS cannot appeal to its own agency director. Either way, these would be past violations of federal law and the appellant would not be entitled to relief. Even if this court took all the appellant's facts as true and found the Ex parte Young exception to 11th Amendment apply, the appellant's case should still be dismissed because it violates the 3rd Amendment. 3rd Amendment prohibits federal courts from ruling on matters that are not ongoing cases or controversies. The death of Mrs. Schultz caused this case to be Article 3, right? You're not talking about the 3rd Amendment. You're talking about Article 3, aren't you? That was ordering troops or something. Oh, I'm sorry. But I say never to say article. Yeah, I'm sorry. I mean, I have no army. Yes. All right. Article 3. Yeah. Article 3. Article 3. Yes. I'm sorry. I had 3 written down. I need to put Article 3. Yeah. But the death of Mrs. Schultz caused this case to be moot and would be in violation of the 3rd Article if they heard the case. Is it mootness or is it standing? Because she was deceased at the time that the federal action was filed. I would believe it would be mootness because there's no ongoing injury in the future. So the from the time that the federal claim was filed, she had already been deceased. So the case didn't become moot by her death. It was already problematic at the time that the complaint was filed. Yes. I would like to verify that, Your Honor. But I believe she did die before. Yeah, but the appellant has argued the substitution of the estate of Mrs. Schultz for Mrs. Schultz individual causes denial of the benefits to be an ongoing controversy. But if this were true, the 11th Amendment Bar on Retrospective Relief Article would be an illusion as the BECA concurrence states. Every past state action should be characterized, could be characterized as ongoing simply by the opening of an estate of the deceased plaintiff. Upon her death, Mrs. Schultz as an individual ceased to exist as a legal entity. At this point, her claim ceased because there was no legal entity to claim the rights. And if you believe the appellant's argument, the controversy restarts as soon as the probate estate is opened. The violation of federal rights resume at the moment of the estate is opened. Clearly, there is a break in the violation of federal rights if you believe appellant's argument. So there is no ongoing controversy because the violation stopped upon the death of Mrs. Schultz. Do you want to let Ms. Eads continue then? Yeah, we're going to split. So I'll let Ms. Eads continue. Good morning, your honors. May it please the court. My name is Susan Eads, and as my co-counsel stated, I represent appellee Kevin Corbett. We're getting an echo. Is there some device? Hold on. I apologize, Judge Hartz. I had my speaker on mute because counsel and I are in the same room. Could you repeat your question, sir? I apologize. I didn't have a question. I just said there was an echo. We were correcting that. I'm sorry. We're trying to share audio feed, and so we're to continue on from where my counsel was at. And with regard to the question that I believe you, Judge Humphrey, were posing with regard to the Article III issue, again, Judge Dishman's order at page 11 speaks to the Article III argument and the issue about federal courts can adjudicate only actual ongoing cases or controversy, citing the Lewis v. Continental Bank Corp case, 494 U.S. 472 at 477. Again, that is a situation where the district court addressed that in the issue and the application of the doctrine of mootness, noting at page 12 of the order the court has no power to decide questions that cannot affect the rights of litigants in the case before it, again, citing back to the same decision at Lewis and noting that mootness applies I don't question that there at least is a case or controversy issue if we're seeking, if the allegation is that prospective relief is sought. I think Judge Phillips' point was simply that this is not a situation where if the focus of the case is prospective relief, ongoing relief, this is not a situation where the plaintiff was at one point eligible to seek prospective relief and then ceased to be, which is the classic mootness situation. This is a situation where when they filed the claim, they were not able to establish they had an interest in prospective relief, which means there is a standing problem, okay? I appreciate that and I just the district court judge addressed it in terms of the mootness aspect, so I just wanted to clarify that point. And again, in that same vein, I would like to point out, as was applicable with Judge Hart's published concurrence in the PECA case, the substitution of the estate that counsel Mr. Riffle has referenced does not cure the ill here, nor does it cure the ill as far as trying to go back to a state court. The appellant chose their venue. They chose to proceed in federal court. They filed the complaint in May of 2020. They did not seek to amend that complaint. They did not seek an ancillary action in the state court. As I can say, Your Honor, has occurred in other cases that cases have been filed citing requests for remedies that are available under state law in state court, while a federal court case was also filed by other attorneys dealing with Medicaid issues. That did not happen in this case. And as was noted, I believe by my, excuse me, I'm sorry, Your Honor, by my co-counsel, the denial was done in February of 2018 by the administrative venue. And so I believe at this point, to even be able to go back to try to seek a statutory, excuse me, a state court action, there would be a statute of limitations problem. And to your, the point that I think your co-counsel made, I just want to clarify if it's also your understanding. I know they did not appeal here administratively. It's minus, well, once they got the adverse ruling, there was not an administrative appeal. Would there have been a process in state, in the state system where they could have ultimately challenged in state court the, the, the propriety, legal propriety of the system itself? It's, I mean, in other words, I under, at least I understood from Mr. Pettifer, that they not only could they have proceeded to, to challenge again, administratively, the decision, but they could have then gone to state court, state district court, and raised a, a challenge of the same sort that they're doing here. Would there have been a bar to them doing that? Let me try to unpackage that briefly, judge, to make sure I'm understanding. I'm just saying, what are their state remedies? What could they have done at, at once they received an adverse determination in state, in the state administrative system, how would their remedies play out? What could they have done to surface the same sort of legal impropriety claim that they're making here? I believe again, your honor, that they could have pursued a 1983 action in the state court and ask in that vein, because as is noted in judge Dishman's order at page 16 footnote three at all, it describes the issues that there was in fact a director's decision. So there was another piece of the administrative appeal case that came down, but the appellants had already filed this lawsuit in federal court. And once they received that decision, they didn't in any way seek to amend their complaint in federal court, nor did they seek at that time to proceed with a state court action. And that's what I'm trying to understand. You say that there was an adverse director's decision. And at that juncture, was there a, a, a, what was the appellate pipeline to challenge that adverse decision? And I believe that would have been in state court, your honor. Okay. So the next step in challenging that decision would have been in state court, right? I believe that again, as you noted, your honor, Ms. Schultz was already deceased. She died in December of 2018. So it would have been brought by and through her estate, but I believe that that could have been addressed in the state court, but that actually was not elected by appellant hearing. Um, your honors at this time, I don't have anything further to share in this. Your honors have other questions for me. I have about a minute left. Very good. Thank you. Council. Thank you. Councilor excused.